IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-02613-PAB-MEH

JENNIFER DEBUHR and
JASON DEBUHR,

    Plaintiffs,

v.

WARREN M. HERN and
BOULDER ABORTION CLINIC, P.C., a Colorado professional corporation,

    Defendants.

---

# ORDER

---

This matter is before the Court on defendants' Motion for Summary Judgment [Docket No. 43].

## I. BACKGROUND

Plaintiffs Jennifer and Jason DeBuhr bring this medical malpractice action against defendants Warren M. Hern and the Boulder Abortion Clinic, P.C. (the "Clinic"), alleging injuries as a result of the medical treatment provided by Dr. Hern at the Clinic. Docket No. 1.

Plaintiffs discovered through an MRI study that their fetus suffered from severe cerebral abnormalities that would reduce its life expectancy to a year. Defendants' Statement of Undisputed Material Facts ("DSUMF") 1. They decided to terminate the pregnancy. *Id*. The treating physician who discovered the fetal brain injury, Andrew Robertson, M.D., referred plaintiffs to Dr. Hern. DSUMF 6. The dilation and extraction

abortion procedure was performed at the Clinic by Dr. Hern in December 2013. DSUMF 2; Plaintiffs' Response to Defendants' Statement of Undisputed Facts ("PRDSUF") 2; Docket No. 47 at 1, ¶ 2. The parties dispute the gestational age of the fetus at the time the procedure was performed, but plaintiffs do not dispute that the fetal abnormality was discovered during the end of Ms. DeBuhr's second trimester of pregnancy. DSUMF 1; PRDSUF 5.

In 2015, Ms. DeBuhr began to experience bleeding and had a hysterectomy. DSUMF 3. Ms. DeBuhr claims that the indication for her hysterectomy was the identification of fetal tissue remaining from the abortion. *Id*.

On November 30, 2015, plaintiffs filed their complaint, asserting claims of medical malpractice, failure to warn, negligent misrepresentation, and loss of consortium. Docket No. 1 at 6-11. Plaintiffs have endorsed two experts to provide opinion testimony on the appropriateness of the medical care provided by Dr. Hern. Regan M. Theiler, M.D., PhD is an obstetrician/gynecologist who testified at her deposition that abortions at twenty-five weeks gestational age were outside the scope of her expertise and she would not render expert opinions on such abortions. PRDSUF 5, 7; Docket No. 43-2 at 15-16, 118:24-119:23. Dr. Robertson is an obstetrician/gynecologist who has not performed any induced abortions after 2009 and has not performed any abortions after twenty weeks gestational age because such abortions are illegal in Nebraska, where he practices. PRDSUF 5-6; Docket No. 47 at 2, ¶¶ 5-6.

On February 28, 2017, defendants filed their motion for summary judgment as to each of plaintiffs' claims. Docket No. 43 at 1, 12. Defendants claim that Drs. Theiler

2

and Robertson are unqualified under Colo. Rev. Stat. § 13-64-401 to testify to the standard of care for the procedure performed by Dr. Hern. *Id*. at 5. Defendants note that such testimony is required in medical malpractice cases as an essential element of a malpractice claim. *Id*. at 3-4. Defendants also argue that plaintiffs did not endorse any expert to testify that Dr. Hern did not appropriately secure informed consent in support of plaintiffs' failure to warn claim. *Id*. at 11-12. Defendants claim that, since plaintiffs have failed to support these claims with qualified expert testimony, defendants are entitled to summary judgment. *Id*. at 12.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of

evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation marks omitted)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citation omitted). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III. ANALYSIS

### A. Applicable Colorado Medical Malpractice Law

In Colorado, "[a] medical malpractice action is a particular type of negligence action." *Day v. Johnson*, 255 P.3d 1064, 1068 (Colo. 2011) (citing *Greenberg v. Perkins*, 845 P.2d 530, 534 (Colo. 1993)). "Like other negligence actions, the plaintiff must show a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and that the defendant's breach caused the plaintiff's injury." *Id.* at 1068-69

(citing *Greenberg*, 845 P.2d at 533). The dispute here concerns the duty of care and whether it was breached.

"[A] physician who holds himself or herself out as a specialist in a particular field of medicine is measured against a standard commensurate with that of a reasonable physician practicing in that specialty," without regard for geographic locality. *Jordan v. Bogner*, 844 P.2d 664, 666-67 (Colo. 1993); *see also Hall v. Frankel*, 190 P.3d 852, 858 (Colo. App. 2008). A physician possessing ordinary skill and exercising ordinary care in applying it is not responsible for a mistake of judgment. *Bonnet v. Foote*, 107 P. 252, 254 (Colo. 1910) (citations omitted); *see Day*, 255 P.3d at 1069 (citing, *inter alia*, *Bonnet* and *Foose v. Haymond*, 310 P.2d 722, 727 (Colo. 1957) ("To avail himself of the defense of a mistake of judgment, it must appear that the physician used reasonable care in exercising that judgment.")). A plaintiff cannot succeed by simply proving a bad outcome, but instead must show that the defendant physician failed to conform to the standard of care, measured by whether a reasonably careful physician "would have acted in the same manner as did the defendant in treating and caring for the patient." *Day*, 255 P.3d at 1069; *accord Greenberg*, 845 P.2d at 534; *Melville v. Southward*, 791 P.2d 383, 389 (Colo. 1990).

"[M]atters relating to medical diagnosis and treatment ordinarily involve a level of technical knowledge and skill beyond the realm of lay knowledge and experience." *Melville*, 791 P.2d at 387. As such, "plaintiff must establish the controlling standard of care, as well as the defendant's failure to adhere to that standard, by expert opinion testimony." *Id.* An expert in one medical subspecialty is not generally permitted to

5

testify against a physician in another medical subspecialty unless the expert demonstrates a "substantial familiarity" with the defendant's specialty or that "the standard of care for both specialties is substantially similar." *Hall*, 190 P.3d at 858-59 (citations omitted). Nonetheless, where it is established that the standard of care for a particular issue is identical "regardless of specialty [and] common to all physicians and fourth-year medical students," physicians may, regardless of specialty, testify as to the general standard of care common to the medical profession. *Id.* at 859.

### A. Evidence of the Standard of Care

#### 1. Dr. Theiler

In response to questions from defense counsel at her deposition, Dr. Theiler testified that she had not performed an abortion on a fetus older than 24 weeks gestational age and that such procedures performed at 25 weeks were "outside [her] area of expertise." Docket No. 43-2 at 6, 97:6-24. Based on this, Dr. Theiler said that she would not testify against Dr. Hern because doing so would be contrary to guidance for providing expert testimony from The American Congress of Obstetricians and Gynecologists. *Id*. at 16, 119:16-21. When questioned by plaintiffs' counsel, Dr. Theiler stated that she did "feel [she] can render some opinions about the adequacy of care." Docket No. 47-1 at 12, 131:25-132:1. Dr. Theiler explained that the procedure she performs on fetuses up to 24 weeks gestational age is "fundamentally . . . the same procedure" as the procedure Dr. Hern performed, although "difficulty increases with gestational age." *Id*., 131:23-25. As to the differences in care at the different gestational ages, she testified that, "with a [dilation and extraction procedure], you need

6

greater dilation at greater gestational age. So 25 weeks, you would need greater dilation than at 23 weeks." *Id*. at 11, 127:20-22. She further testified that, with respect to alleged failures to document the details of surgical technique in the medical record, to check for whether fetal bones are retained in the uterus, and to inspect the products of conception at the end of the procedure, there is no difference in the standard of care between 24 and 25 weeks gestational age. *Id*., 11-12, 128:11-131:9.

Defendants argue that Dr. Theiler's opinion on the standard of care must be excluded because she stated at her deposition that she did not have expertise in the particular procedure performed by Dr. Hern and would not offer expert testimony on the issue. In other words, defendants claim that because Dr. Theiler said she would not testify, she cannot, and because she said that she is not an expert on the standard of care for abortions at 25-26 weeks, she is not. Docket No. 43 at 8 ("Dr. Theiler admitted that she was not qualified to render opinions against Dr. Hern. She then admitted that she would not be testifying against him at trial. Accordingly, Plaintiff cannot rely upon Dr. Theiler's opinions to overcome her burden of proof in this case alleging medical negligence."). Dr. Theiler's statement that she would not express opinions about Dr. Hern's care does not, by itself, preclude her testimony. In *Watson v. United States*, 485 F.3d 1100, 1105 (10th Cir. 2007), the government's expert, Dr. Goforth, testified under oath at his deposition that he did not possess relevant expertise. The opposing party sought to "hold the government to its witness's admission and deem Dr. Goforth unqualified as a matter of law," but the trial court allowed him to testify and the Tenth Circuit affirmed that decision. *Id*. The Tenth Circuit explained that the "Federal Rules of Evidence assign to the district court the job of deciding whether an individual is

7

sufficiently qualified to testify as an expert, by virtue of training and experience and based on the facts and circumstances of each case." *Id*. (citations omitted). Similarly, Dr. Theiler's statement that she is unqualified to render an opinion as to Dr. Hern's care does not necessarily preclude her testimony. "While a witness's self-estimation must surely factor into the district court's decision whether or not to receive his testimony, it is not necessarily dispositive under the Federal Rules of Evidence or our received precedents." *Id*. Instead, the Court must evaluate, in light of her statements and under Colorado law, whether the reasons Dr. Theiler said that she was unqualified constitute appropriate reasons to bar her testimony.[1]

With respect to Dr. Theiler's qualifications, defendants argue that she has "no more than a casual familiarity with the performance of a 26 week abortion" because she has not performed such a procedure and refers such cases to other physicians. Docket No. 43 at 10. Plaintiffs respond that Dr. Theiler is qualified to render opinions on the

---

[1] Plaintiffs also attach a declaration from Dr. Theiler wherein she says that her "statements during the deposition regarding my qualifications to render expert opinions did not take into account my education, knowledge, training, and experience as a board-certified obstetrician/gynecologist, including my experience in performing [dilation and extraction] procedures. When all of those factors are taken into consideration, my response to those questions would have been that I am qualified to render the opinions stated in my expert report and to testify as a witness in this case regarding the treatment provided by Dr. Hern to Jennifer DeBuhr." Docket No. 47-4 at 2, ¶ 9. Defendants object on the grounds that this declaration contradicts her deposition testimony and is a sham affidavit. Docket No. 56 at 2-3. Defendants correctly point out that Dr. Theiler did testify at her deposition that her opinions were based on her "personal clinical experience, observational experience supervising other physicians performing similar procedures, years of training residents to perform similar procedures" as well as her "personal experience with many complications of similar procedures." Docket No. 56-2 at 2, 36:15-25. The Court finds that each of the factors from *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986), concerning sham affidavits is satisfied. Accordingly, the Court will disregard Dr. Theiler's declaration.

8

standard of care due to her familiarity with underlying principles and her practice of similar, but not identical, procedures. Docket No. 47 at 7. Plaintiffs argue that Dr. Theiler is familiar with and performs abortions up to 24 weeks gestational age and that the same principles and standards of care apply to the procedure at issue. *Id*.

When Dr. Theiler's responses to plaintiffs' counsel's questioning is considered, it is apparent that, despite her lack of experience with abortions at 25-26 weeks, there are aspects of her opinions that are not dependent on the fetus being 24 as opposed to 25 or 26 weeks. For example, Dr. Theiler testified that checking for fetal bones using a fetal ultrasound does not vary with gestational age. Docket No. 47-1 at 12, 129:14-20 ("Q. Does [gestational age] have anything to do with recognizing the retention of fetal bones in the uterus at the end of the procedure using ultrasonography? A. No."). As noted earlier, she provided similar testimony regarding failures to document and failures to inspect the products of conception. Defendants provide no reason why Dr. Theiler's experience and training on those topics that apply equally, or vary little, depending on gestational age are not applicable to abortions performed at 25 or 26 weeks. *See* Docket No. 56 at 1-7. Thus, the Court finds that Dr. Theiler is qualified under Colorado law to testify as to these three topics because plaintiff has shown that she has a "substantial familiarity" with Dr. Hern's subspecialty and that there is a "similarity between the standards of care in the two fields." *Hall*, 190 P.3d at 858 (citing Colo. Rev. Stat. § 13-64-401).

### 2. Dr. Robertson

Defendants argue that Dr. Robertson is "uniquely unqualified to render opinions in this case as it is a class 4 felony to perform abortions over 20 weeks in Nebraska."

9

Docket No. 43 at 9. Defendants do not explain the relevance of this argument other than it means that Dr. Robertson, in conformance with Nebraska law, does not perform abortions after 20 weeks. Defendants also note that Dr. Robertson has not performed abortions since 2009 and has never performed abortions at 26 weeks gestational age. *Id*. at 9-10. In response, plaintiffs argue that Dr. Robertson has the same specialty as Dr. Hern and frequently performs the same dilation and extraction procedure as Dr. Hern, albeit in cases where the fetus has already died in utero from natural causes. Docket No. 47 at 14-15; Docket No. 47-2 at 24, 72:16-19, and at 30, 78:20-23.

The Court finds that Dr. Robertson is competent to testify under Colorado law on the standard of care for dilation and extraction procedures for fetuses at 26 weeks gestational age. That Dr. Robertson has not recently performed induced abortions, i.e., procedures where the fetus is alive just before the dilation and extraction, does not show that he lacks competence. First, plaintiffs do not take issue with the injection that led to the demise of the fetus and, instead, only argue that Dr Hern failed to perform the subsequent dilation and extraction according to the standard of care. *See* Docket No. 47-2 at 30, 78:17-20; *see also* Colo. Rev. Stat. § 13-64-401 (referring to the "act or omission which is the subject of the claim"). Defendants do not dispute plaintiffs' claim that the dilation and extraction procedure Dr. Robertson performs on deceased fetuses is the same procedure that Dr. Hern performed; defendants only argue that the overall procedure is not the same. *See* Docket No. 56 at 7. Second, there is no evidence that the standard of care has changed since 2009 when Dr. Robertson performed induced abortions. *See* Docket No. 47 at 7. Accordingly, the Court finds that Dr. Robertson was "substantially familiar with applicable standards of care and practice as they relate to

10

the act or omission which is the subject of the claim on the date of the incident." Colo. Rev. Stat. § 13-64-401. Thus, defendants have failed to show that Drs. Theiler and Robertson are unqualified under Colorado law and therefore plaintiffs cannot present expert testimony in support of their medical malpractice claim, and the Court will deny summary judgment with respect to that claim. *See Bausman*, 252 F.3d at 1115 (explaining the burden shifting framework for summary judgment).

### B.  Evidence of a Lack of Informed Consent

Defendants argue that plaintiffs' experts testified at their depositions that Dr. Hern reasonably and appropriately obtained Ms. DeBuhr's informed consent. Docket No. 43 at 12; *see also* Docket No. 43-2 at 2-3, 39:19-40:3. As a result, defendants state that, because plaintiffs have not endorsed any other experts on this issue and because Colorado law requires expert testimony on the issue of informed consent, they are entitled to summary judgment. Docket No. 43 at 11-12.

In response, plaintiffs argue that the statements defendants rely on were made in reference to the written informed consent procedure carried out on December 3, 2013, Docket No. 47 at 15, but that, due to a change in circumstances during the actual procedure on December 6, Dr. Hern should have explained the situation to Ms. DeBuhr and gotten her consent to proceed. Docket No. 47 at 15. In particular, plaintiffs argue that Dr. Hern "recognized or should have recognized [Ms. DeBuhr's] poor cervical dilation" prior to rupturing her membranes. *Id.* at 17. At the point Dr. Hern recognized this issue, plaintiffs claim Dr. Hern "had a duty to conduct another informed consent discussion with [Ms. DeBuhr] to present her with treatment options, including transport

and admission to the Boulder Community Hospital, so that she had the opportunity to choose her treatment." *Id*. at 19. Plaintiffs rely on *Gorab v. Zook*, 943 P.2d 423, 430 (Colo. 1997), which holds that "once informed consent has been obtained prior to treatment, a physician is under no duty to continue warning the patient of possible side effects during the continuing course of that treatment." However, the court also stated in dicta that "where a new, previously undisclosed, and substantial risk arises, there may be an additional and independent duty to warn by the physician." *Id*.

In reply, defendants argue that there is no basis to apply the exception to the rule from *Gorab* that pre-treatment informed consent suffices because "neither of Plaintiffs' experts have opined there were any new risks or 'changed circumstances.'" Docket No. 56 at 9 (emphasis removed).[2] Defendants are incorrect. In her expert report, Dr. Theiler states that "[r]upture of the membranes prior to achieving adequate cervical dilation . . . increases the risk of infection if the procedure is not completed shortly after rupture." Docket No. 47-4 at 31. Dr. Theiler goes on to state that, "[a]t the point when poor dilation was recognized, Dr. Hern was obligated to discuss with Mrs. DeBuhr her options for further care as part of the ongoing process of informed consent." *Id*. Thus, Dr. Theiler opined that there was a "new and material danger" due to the increased risk of infection such that Dr. Hern had a "new duty" to get informed consent "based on the changed circumstances." *Gorab*, 943 P.2d at 430. The Court

---

[2] Defendants' related argument that "[n]owhere in Dr. Theiler's deposition did she testify that there was a new, undisclosed risk of the procedure that warranted a subsequent informed consent" is unpersuasive. Docket No. 56 at 9. There is no indication that Dr. Theiler was asked at her deposition about this topic and, as discussed below, this opinion was disclosed in Dr. Theiler's expert report.

finds that defendants have failed to show that plaintiffs lack expert support for their informed consent claim.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants' Motion for Summary Judgment [Docket No. 43] is **DENIED**.

DATED September 27, 2017.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge